**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOL DE JANEIRO USA, INC., and<br>SOL DE JANEIRO IP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MCOBEAUTY PTY LTD and<br>MCOBEAUTY, INC.,<br><br>Defendants. | Case No. 1:24-cv-08862-ER |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MCOBEAUTY PTY LTD AND MCOBEAUTY, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ....... 1

II. BACKGROUND ....... 2

III. LEGAL STANDARD FOR MOTION TO DISMISS ....... 4

IV. ARGUMENT ....... 4

A. SDJ Lacks Standing ....... 4

B. SDJ's Count I, False Advertising Under 15 USC § 1125 Should Be Dismissed ....... 6

1. SDJ Identifies Three Allegedly "False" Statements ....... 7

2. SDJ's Examples Are Not Literally False Under The Lanham Act ....... 10

3. SDJ Pleads No Facts Establishing Causation Or Injury ....... 12

C. SDJ's Count II, Trade Dress Infringement Under 15 USC § 1125 Should Be Dismissed ....... 13

1. SDJ Did Not Articulate Its Trade Dress With Specificity ....... 14

2. SDJ Failed To Allege Its Claimed Dress Is Non-Functional ....... 17

3. SDJ Failed To Include Facts Establishing Secondary Meaning ....... 18

4. The Amended Complaint Underscores That Consumers Are Not Confused ....... 19

D. SDJ's Count III, Violation Of New York Gen. Bus. Law § 349 Should Be Dismissed ....... 21

V. CONCLUSION ....... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*,
No. 21-CV-7712 (VEC), 2022 WL 3227861 (S.D.N.Y. Aug. 10, 2022), *aff'd in part, vacated in part, remanded*, No. 22-1965, 2024 WL 89120 (2d Cir. Jan. 9, 2024)....17, 18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....4

*Caliko, SA v. Finn & Emma, LLC*,
No. 21-CV-3849 (VEC), 2022 WL 596072 (S.D.N.Y. Feb. 28, 2022)....16

*Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*,
128 F.4th 112 (2d Cir. 2025)....16

*Carson Optical, Inc., v. Prym Consumer USA, Inc.*,
11 F. Supp. 3d 317 (E.D.N.Y. 2014)....13, 17, 18, 19

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*,
843 F.3d 48 (2d Cir. 2016)....6, 13

*Coca-Cola Co. v. Tropicana Prods., Inc.*,
690 F.2d 312 (2d Cir. 1982)....5, 6

*Donahue v. Ferolito, Vultaggio & Sons*,
13 A.D.3d 77, 78, 786 N.Y.S.2d 153 (2004)....24

*Designers North Carpet, Inc. v. Mohawk Indus., Inc.*,
153 F. Supp. 2d 193 (E.D.N.Y. 2001)....23

*Eliya, Inc. v. Steven Madden, Ltd.*,
749 F. App'x 43 (2d Cir. 2018)....14

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019)....24

*Gale v. Smith & Nephew, Inc.*,
989 F. Supp. 2d 243 (S.D.N.Y. 2013)....23

*George Basch Co. v. Blue Coral, Inc.*,
968 F.2d 1532 (2d Cir. 1992)....................20

*Gibbons v. Malone*,
703 F.3d 595 (2d Cir. 2013)....................4

*Goshen v. Mut. Life Ins. Co. of New York*,
98 N.Y.2d 314, 774 N.E.2d 1190 (2002)....................24

*Groden v. Random House, Inc.*,
61 F.3d 1045 (2d Cir. 1995)....................6

*Heckman v. Town of Hempstead*,
568 Fed. Appx. 41 (2d Cir. 2014)....................7

*JTH Tax LLC v. AMC Networks Inc.*,
694 F. Supp. 3d 315 (S.D.N.Y. 2023)....................19

*Keiler v. Harlequin Enters. Ltd.*,
751 F.3d 64 (2d Cir. 2014)....................4

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
113 F.3d 373 (2d Cir.1997)....................1, 14, 15

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................5, 6, 13

*Lifeguard Licensing Corp. v. Gogo Sports, Inc.*,
No. 10-CV-9075 PAC, 2013 WL 4400520 (S.D.N.Y. Aug. 15, 2013)....................23

*Lipton v. Nature Co.*,
71 F.3d 464 (2d. Cir. 1995)....................12

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
306 F. Supp. 3d 629 (S.D.N.Y. 2018)....................11, 22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................4, 5

*Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*,
960 F.2d 294 (2d Cir. 1992)....................12, 13

*National Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*,
198 F. Supp. 2d 474 (S.D.N.Y. 2002)....................22

*New World Sols., Inc. v. NameMedia Inc.*,
150 F. Supp. 3d 287 (S.D.N.Y. 2015)....................22, 23

*Noe v. Realty*,
No. 19-CV-1455, 2024 WL 5508198 (S.D.N.Y. July 22, 2024), *report and recommendation adopted sub nom. Noe v. Ray Realty*, No. 19 CIV. 1455, 2025 WL 958407 (S.D.N.Y. Mar. 31, 2025), appeal dismissed (June 5, 2025) ....................11

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*,
269 F.3d 114 (2d. Cir. 2001) ....................13

*NYU Langone Health Sys. v. Northwell Health, Inc.*,
No. 23-cv-5032, 2024 WL 898941 (S.D.N.Y. Mar. 1, 2024) ....................10, 23

*Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*,
305 F. Supp. 3d 540 (S.D.N.Y. 2018) ....................19

*Pizza Hut, Inc. v. Papa John's Intern., Inc.*,
227 F.3d 489 (5th Cir. 2000) ....................7

*Polaroid Corp. v. Polarad Elec. Corp.*,
287 F.2d 492 (2d Cir. 1961) ....................19

*Saba Capital Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
88 F.4th 103 (2d Cir. 2023) ....................4

*Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*,
234 F. Supp. 3d 548 (S.D.N.Y. 2017) ....................18

*Savin Corp. v. Savin Grp.*,
391 F.3d 439 (2d Cir. 2004) ....................19

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ....................24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................5

*Streetwise Maps, Inc. v. VanDam, Inc.*,
159 F.3d 739 (2d Cir. 1998) ....................20

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) ....................10, 12

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001) ....................1, 17, 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................5

*Walker Wear LLC v. Off-White LLC*,
624 F. Supp. 3d 424 (S.D.N.Y. 2022)....................22, 23

*Ward v. TheLadders.com, Inc.*,
3 F. Supp. 3d 151 (S.D.N.Y. 2014) ....................24

*Warth v. Seldin*,
422 U.S. 490 (1975)....................4, 5

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001)....................14, 15

**Statutes**

15 U.S.C. § 1125.................... *passim*

New York General Business Law Section 349.................... *passim*

Defendants MCoBeauty Pty Ltd and MCoBeauty, Inc, (together, "**Defendants**" or "**MCoBeauty**"), by their undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6), Local Civil Rule 7.1(a)(2), and this Court's Individual Practices, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint filed by Plaintiffs Sol de Janeiro USA, Inc. and Sol de Janeiro IP, Inc. (together, "**Plaintiffs**" or "**SDJ**"). As discussed herein, SDJ has not stated a cause of action against MCoBeauty and the Amended Complaint should be dismissed, with prejudice.

## I. PRELIMINARY STATEMENT

SDJ's attempt to characterize routine competitive similarity as actionable false advertising or trade dress infringement overstates the scope of trademark law and the "strong federal policy in favor of vigorously competitive markets." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir.1997). "When evaluating [trade dress] claims, courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." *Id.* at 375. The Supreme Court has explained, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).

In the modern competitive consumer marketplace, "dupe" products—items that offer comparable aesthetics or functionality to higher-priced goods at a more accessible price point—have become a widespread and well-recognized phenomenon. Encouraged by social media influencers and viral posts, consumers actively seek out lower-cost alternatives to expensive luxury brands, and retailers routinely market products that evoke popular trends without replicating any

protected intellectual property.[1] A 2023 survey found that 71% of Gen Z and 67% of Millennials sometimes or always buy less expensive dupes of pricier name-brand products.[2] This growth in dupe culture reflects ordinary competition, not deception: consumers recognize these products as legitimate, affordable substitutes.

SDJ's Amended Complaint ("**AC**") is predicated on the fundamentally flawed premise that a "dupe" is an improper "duplicate" that will confuse consumers. The AC and the exhibits annexed thereto on their face establish the opposite: consumers are clearly aware of the source, affiliation, and sponsorship of the products at issue. The AC does not state a substantive claim; it is replete with conclusory assertions and fails to identify facts to support protectable trade dress, likelihood of consumer confusion, or actionable misrepresentation by MCoBeauty. As discussed herein, SDJ's claims fall well short of Rule 8's pleading standard and the AC should be dismissed.

## II. BACKGROUND

MCoBeauty is a popular Australian beauty brand founded on the philosophy that luxury beauty products should be accessible to everyone. *See* https://mcobeauty.com/pages/about-us.[3] MCoBeauty creates quality, cruelty-free, vegan products that offer consumers the performance and feel of high-end, designer brands without the high-end price tag. *Id.* MCoBeauty's vision is

---

[1] *See, e.g.*, "Influencers Fuel Popularity of 'Dupe' Products—and Present Big Opportunities for Upstart Brands," Inc.com, December 18, 2023, https://www.inc.com/bruce-crumley/influencers-fuel-popularity-of-dupe-products-and-present-big-opportunities-for-upstart-brands.html (last viewed January 26, 2026); "Lululemon's lawsuit against Costco highlights the rise of fashion 'dupes,'" AP News, July 2, 2025, https://apnews.com/article/costco-lululemon-birkin-fashion-dupes-tiktok-2def75bcaf37e81ccb0065fe67b82101 (last viewed January 26, 2026).

[2] *See* "Gen Z is the 'dupe' generation", Business Insider, December 14, 2023, https://www.businessinsider.com/gen-z-is-the-dupe-generation-2023-12?r=US&IR=T (last viewed January 26, 2026).

[3] MCoBeauty's U.S. website is at https://us.mcobeauty.com.

"to consistently deliver the best in luxe beauty for less, in everything it does." *Id.*; *see also* AC, ¶ 41 (acknowledging MCoBeauty's goal of "supporting the luxe for less product offering"). MCoBeauty's products are available for purchase online and in stores in Australia, New Zealand, and the United States. In the United States, MCoBeauty products are sold in grocery and discount department stores such as Kroger, Fred Meyer, and Target. By contrast, SDJ's products are sold in premium beauty specialty stores such as Sephora and Ulta. AC, ¶ 34.

SDJ alleges that MCoBeauty's Fragrance Mists No. 0, No. 1, No. 2, No. 3, No. 4, No. 6, and No. 7 (the "**MCoBeauty Mists**") are "cheap knockoffs" of Sol de Janeiro's Cheirosa Perfume Mists (the "**SDJ Mists**"). AC, p. 1. SDJ further accuses MCoBeauty of adopting or endorsing allegedly false statements of social media influencers that describe the similarity of the scents of the MCoBeauty Mists and the SDJ Mists. AC, pp. 2-3 and, *e.g.*, ¶ 54. According to SDJ, MCoBeauty's Mists and accused actions constitute false advertising and trade dress infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125, and deceptive acts and practices under Section 349 of the New York General Business Law. *Id.*, ¶¶ 105-122.

SDJ describes itself as a "leading distributor and retailer of premium quality skin, hair, and body care products," and boasts significant sales and steady revenue increases since 2020. *Id.*, ¶¶ 9, 14. Rather than present facts supporting violations of law, the AC presents a generic description of its claimed trade dress, holds out subjective and unprovable opinions or puffery as "literally false" statements, cites consumer comments that demonstrate consumers are *not* confused, and relies on unsupported legal conclusions. Moreover, SDJ pleads no concrete injury in fact, a deficiency that prevents this Court from exercising jurisdiction in this dispute. MCoBeauty asks this Court to dismiss the Amended Complaint and reject SDJ's attempt to block competition.

## III. LEGAL STANDARD FOR MOTION TO DISMISS

A complaint must be dismissed if it fails to allege "enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 580 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). "The pleading standard Rule 8 announces . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that merely "tenders 'naked assertion[s] devoid of 'further factual enhancement'" is insufficient. *Id.* at 678 (internal citations omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). But the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## IV. ARGUMENT

### A. SDJ Lacks Standing

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To satisfy Article III, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Saba Capital Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 110 (2d Cir. 2023); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Where, as here, a case is at the

pleading stage, the plaintiff must 'clearly … allege facts demonstrating each element'" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (quoting *Warth*, 422 U.S. at 518).

In *Lujan*, the Court made clear that factual injury is a distinct prerequisite of standing. Statutory liability alone is not enough; factual injury is an "irreducible constitutional minimum." 504 U.S. at 556. There is no exception to this rule for claims brought under the Lanham Act. For example, Article III requires plaintiffs that allege claims of false advertising under 15 U.S.C. § 1125(a) to "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occur[s] when deception of consumers cause them to withhold trade from the plaintiff." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "The likelihood of injury and causation will not be presumed, but must be demonstrated in some manner." *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982).

Here, SDJ pleads only hypothetical or abstract harm and presents no facts regarding causation. Thus, the AC fails to show that this matter presents "a real controversy with real impact on real persons." *TransUnion*, 594 U.S. at 424 (internal citations omitted). The AC contains no allegations that SDJ "suffered some threatened or actual injury resulting from the putatively illegal action." *Warth*, 422 U.S. at 499. The handful of paragraphs in the AC addressing harm, injury, or damage each constitute *conclusions* that SDJ has been harmed, injured, or damaged, and lack any supporting *facts* demonstrating how or in what way this injury has occurred or will occur absent the Court's intervention, or any *facts* which could plausibly establish MCoBeauty's alleged unlawful conduct as the cause. *See* AC, ¶¶ 92, 99, 108, 110, 115, 116, 122 (encompassing ***all***

statements related to SDJ's "harm," "injury," or "damage"). In fact, SDJ undermines its own claim of harm by boasting of its success. It avers:

> Since 2020, [SDJ] has *sold over 100 million units of beauty and cosmetic products in the U.S. and worldwide*, consisting of fragrances, skin care products, and other beauty products, *generating hundreds of millions of dollars in revenue*. In 2023, [SDJ] had a *174% sales increase, with over $450 million in revenue, during the six month period ending on September 30, 2023*. In the third quarter of 2023, U.S. sales alone grew by over 19%.

AC, ¶ 14 (emphasis added); *see also id.*, ¶¶ 9-17 (discussing popularity and commercial success of the SDJ brand). Although the AC is silent as to when the MCoBeauty Mists entered the U.S. market, nowhere does it state that SDJ's sales were negatively impacted by the MCoBeauty Mists, nor does it plead any facts suggesting "economic or reputational injury flowing directly from the deception wrought by" MCoBeauty. *Lexmark*, 572 U.S. at 133.

SDJ must "offer something more than a mere subjective belief that [it] is likely to be injured as a result" of MCoBeauty's alleged unlawful conduct. *Coca-Cola Co.*, 690 F.2d at 316. SDJ "must submit proof which provides a reasonable basis for that belief." *Id.* Having failed to even attempt to show concrete and particularized harm, SDJ lacks Article III standing and this action should be dismissed.

### B. SDJ's Count I, False Advertising Under 15 USC § 1125 Should Be Dismissed

"To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016). "Statements of opinion are generally not the basis for Lanham Act liability." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) "[T]he statements at issue must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective

fact." *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) (finding the slogan "Better Ingredients, Better Pizza" to be non-actionable puffery).

### *1. SDJ Identifies Three Allegedly "False" Statements*

SDJ identifies three instances to support its false advertising claim, none of which originated from or was made by MCoBeauty. The first of these is a video by social media influencer @laurenilord, viewable on MCoBeauty's YouTube channel since February 2024. AC, ¶ 55. According to SDJ, this video "features a side-by-side comparison of MCoBeauty Fragrance Mist No. 1 and Sol de Janeiro Cheirosa Perfume Mist 40." *Id.*, ¶ 56. The AC presents opportunistically excerpted quotes from this video: "the influencer stating that MCoBeauty Fragrance Mist No. 1 'smells exactly' like Sol de Janeiro Cheirosa Perfume Mist 40" and "the influencer stating that MCoBeauty Fragrance Mist No. 1 'lasts most, if not all day long' and can 'hold better than' Sol de Janeiro Cheirosa Perfume Mist 40." *Id.*, ¶¶ 57 and 58, respectively. However, SDJ provided a link to and a transcript of the video, both of which put these excerpts in context. In the video, the influencer states, "I'm going to need to ring up Shelley [MCoBeauty's founder[4]] because how does this [*indicating MCoBeauty product*] smell exactly like this [*indicating SDJ product*]?" *See* Dkt. 41-1, AC Exhibit A (transcript of video).[5] The influencer also states, "I have been told that this [*indicating MCoBeauty product*] will last most if not all day long, and I find myself reapplying this [*indicating SDJ product*] a lot throughout the day. So, if this [*indicating MCoBeauty product*] can hold better than this [*indicating SDJ product*], and it's

---

4 *See* https://us.mcobeauty.com/pages/about-shelley (MCoBeauty's US website page "About Shelley", last viewed January 22, 2026).

5 In a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference." *Heckman v. Town of Hempstead*, 568 Fed. Appx. 41, 43 (2d Cir. 2014).

half the price? Sorry some people call it controversial; I call it a slay." *Id.* (products indicated are visible upon view of the video at link provided in SDJ's Ex. A[6]).

SDJ's second example of an allegedly false statement comes from a June 18, 2024 Instagram post by social media influencer @trendmood1. *See* AC, ¶¶ 62-64. SDJ speculates, without providing supporting facts, "MCoBeauty has an affiliation, connection, or association with @trendmood1 as @trendmood1 is an influencer, ambassador for and/or collaborator with MCoBeauty." *Id.*, ¶ 63.[7] According to SDJ, this Instagram post "features a voiceover claiming that the Infringing Products scent notes are identical or nearly identical to the compared Sol de Janeiro Products," "falsely claims that the Infringing Products' 'scents last all day,'" and "encourages U.S. consumers who are 'fans' of the Sol de Janeiro fragrance mists to not 'miss this launch' by MCoBeauty." *Id.*, ¶¶ 70, 71 and 72, respectively. The text of the post's caption and a transcript of the voiceover are attached to the AC as an exhibit. *See* Dkt. 41-3, AC Exhibit C (transcript of Instagram post). This transcript shows that that the post and the voiceover describe the scent notes, but do not make the "identical or nearly identical" comparison that SDJ describes. Similarly, the "fans" SDJ references are not "'fans' of the Sol de Janeiro fragrance mists" as SDJ contends. AC, ¶ 72. Rather, the voiceover states, "if you are a fan of this kind of fragrance mist you don't wanna miss this launch." *See* Dkt. 41-3. Unlike the @laurenilord video, which

---

6 *See* Dkt. No. 41-1, https://www.youtube.com/watch?v=Ep47L7cgqFw&list=PLGgHcxqki6oomD8vz30vS7bzmbc9Obtsv (last viewed January 22, 2026).

7 The AC alleges, "[o]n its website, MCoBeauty states that 'Internationally recognized celebrities, influential TV personalities and award-winning makeup artists have all become ambassadors for the brand supporting the luxe for less product offering." AC, ¶ 41. However, SDJ pleads no facts suggesting that @trendmood1 or @laurenilord is a brand ambassador or has any transactional relationship with MCoBeauty. The AC merely describes each of these individuals as "social media influencers." *Id.*, ¶¶ 55, 62.

MCoBeauty shared on its YouTube channel, the @trendmood1 Instagram post was not shared by any MCoBeauty account or under any handle operated by MCoBeauty. SDJ proclaims that MCoBeauty "affirmatively sponsored" the post "by liking it and commenting 'Love it!' with a heart-eyes smiley emoji," declaring this to be an "express adoption of the content of the [post]". AC, ¶¶ 76 and 77, respectively. SDJ provides no facts supporting its conclusion that engagement with a social media post is tantamount to adoption or affirmative sponsorship.[8]

As its third and final example of false advertising, SDJ points to customer reviews on MCoBeauty's website stating that the MCoBeauty Mists "are duplicates or copies of and smell the exact same as the Sol de Janeiro Products." AC, ¶ 80. SDJ includes a screenshot of five nearly identical posts, all made on the same date (April 26, 2025) by the same reviewer ("**Fiona**") as follows:




*Id.*, ¶ 81. SDJ blames MCoBeauty's "'review team' that monitors the reviews on its website" for failing to "correct false, misleading or unsubstantiated statements." *Id.*, ¶¶ 82-83. SDJ's

[8] SDJ also suggests that the @trendmood1 Instagram post somehow violates MCoBeauty's obligations under "Federal Regulations and the FTC Guidelines," but provides no information or citation regarding which regulations or guidelines are applicable. *See* AC, ¶¶ 74-77. Not only do these paragraphs state unsupported legal conclusions, but SDJ brings no claim under these unspecified regulations and guidelines, therefore, MCoBeauty need not address them in this Memorandum.

footnote 7 includes a link to and an excerpt from an MCoBeauty Terms and Conditions page stating "[r]eviews are updated and rotated on a regular basis to provide fair exposure of positive and negative experiences with our products." *Id.*, n. 7. These customer reviews, like the other alleged false statements, cannot be plausibly construed as anything more than puffery, consumer comments, or statements of a subjective opinion.

### ***2. SDJ's Examples Are Not Literally False Under The Lanham Act***

"To satisfy the falsity element, the plaintiff must allege that the defendant's advertising is 'literally false' or is impliedly false because it is 'likely to mislead or confuse customers.'" *NYU Langone Health Sys. v. Northwell Health, Inc.*, No. 23-cv-5032, 2024 WL 898941, at *5 (S.D.N.Y. Mar. 1, 2024) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). SDJ alleges that the statements at issue are literally false. *See* AC at ¶¶ 54, 59, 73, 79, 84 (describing the statements as "literally false"). "When an advertisement is shown to be literally or facially false, consumer deception is presumed. … This is because plaintiffs alleging a literal falsehood are claiming that a statement, on its face, conflicts with reality, a claim that is best supported by comparing the statement itself with the reality it purports to describe." *Time Warner Cable*, 497 F.3d at 153 (internal citations omitted).

The AC makes ***no*** effort to compare the statements SDJ alleges as "literally false" to the reality they purport to describe. Instead, for each example, SDJ simply declares the statements to be false because the MCoBeauty Mists "(a) are not produced with the same materials; (b) do not present the exact same fragrances; and (c) their fragrances dissipate more quickly than the Sol de Janeiro Products' fragrances." AC, ¶¶ 61 (regarding the @laurenilord video), 73 (regarding the @trendmood1 Instagram post), 84 (regarding the customer reviews). There are no facts in the AC to support this conclusion; the AC is silent regarding (a) ingredients or materials used in either the MCoBeauty or SDJ products, (b) comparison of the fragrances, or (c) surveys or studies

measuring how quickly the fragrances dissipate. "In deciding a motion to dismiss, the Court 'must accept as true all of the factual allegations contained in a complaint[,]' but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Although Rule 8 'does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Noe v. Realty*, No. 19-CV-1455, 2024 WL 5508198, at *9 (S.D.N.Y. July 22, 2024), *report and recommendation adopted sub nom*. *Noe v. Ray Realty*, No. 19 CIV. 1455, 2025 WL 958407 (S.D.N.Y. Mar. 31, 2025), appeal dismissed (June 5, 2025) (internal citations omitted).

Moreover, each of these statements on its face is a statement of subjective opinion, not of objective fact. Whether @laurenilord, @trendmood1, or MCoBeauty customer Fiona experience the scent of MCoBeauty's mists to be exactly like that of SDJ's or remain on the skin longer than SDJ's has little bearing on the universal accuracy of that experience. The AC is clear that SDJ submits the statements in question as "literally false." *See* AC, ¶¶ 54, 59, 73, 79, 84. "Under the "literally false" theory, 'the message must be unambiguous; if the representation 'is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false,' and the advertisement is actionable only upon a showing of actual consumer confusion.'" *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018). In its discussion of trade dress infringement, SDJ's own pleading shows that the experience of the two brands' fragrance mists is susceptible to more than one reasonable interpretation and cannot be literally false. *See* AC, ¶ 95. SDJ presents a cherry-picked "sampling of customer reviews from MCoBeauty's U.S. website" of the MCoBeauty Mists, including comments that the "scent is a little off and watered down" and the MCoBeauty Mists' "scent doesn't carry much after 5 minutes after putting it on." *Id.* MCoBeauty questions why, under SDJ's premise that customer reviews represent

MCoBeauty's own false statements, the examples listed in Paragraph 95, all of which are unfavorable to MCoBeauty and favorable to SDJ, do not also constitute advertisements, endorsements, or statements otherwise attributable to MCoBeauty. In any event, each of those statements – the positive and negative reviews and impressions – reflect subjective opinions, not assertions of objective facts.

The three examples SDJ alleges as "false advertisements" are more appropriately understood as puffery, which is "not actionable under the Lanham Act." *See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d. Cir. 1995); *see also Time Warner Cable*, 497 F.3d at 160. The Second Circuit describes puffery as "subjective claims about products, which cannot be proven either true or false" or "an exaggeration or overstatement expressed in broad, vague, and commendatory language" "considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer." *Time Warner Cable*, 497 F.3d at 159 (internal citations omitted). The statements SDJ calls "literally false" – social media influencer or customer statements that the MCoBeauty Mists smell exactly the same as or "hold better than" the SDJ Mists – are exactly the kinds of exaggerated and broad overstatements that the law specifically exempts under the Lanham Act. *See Id.*, at 160 ("mere puffery, advertising that is not deceptive for no one would rely on its exaggerated claims, is not actionable under § 43(a)." (internal citation omitted). SDJ has not adequately pled literal falsity.

### *3. SDJ Pleads No Facts Establishing Causation Or Injury*

Even if the Court were to accept the AC's proffered "literally false" statements as sufficient at this stage, SDJ's false advertising claim nevertheless fails. "[T]he injuries redressed in false advertising cases are the result of public deception." *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992). Absent a showing that consumers were deceived by the false statement, "the plaintiff cannot establish that it suffered

any injury as a result of the advertisement's message. Without injury there can be no claim, regardless of commercial context, prior advertising history, or audience sophistication." *Id.* As discussed *supra* in Section IV(A), SDJ does not offer facts to establish that it suffered or will suffer concrete injury caused by the statements it attributes to MCoBeauty (or any of the accused conduct). *See Lexmark*, 572 U.S. at 133 (Lanham Act false advertising claims require a showing of "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising"). SDJ merely alleges, "MCoBeauty's statements have caused and will continue to cause Sol de Janeiro significant harm to its goodwill and to its sales." AC, ¶ 108. SDJ has access to its own sales information and has no excuse for failing to allege facts demonstrating "significant harm" to its sales (if such harm exists) flowing directly from MCoBeauty's statements.

SDJ believes that its unsupported conclusion that statements amounting to run-of-the-mill competition are "literally false" is sufficient. The law, however, says otherwise. *See Church & Dwight*, 843 F.3d at 65 (enumerating the elements of a Lanham Act false advertisement claim). Having failed to plead literally false statements, causation, or injury, SDJ's claim must be dismissed.

### C. SDJ's Count II, Trade Dress Infringement Under 15 USC § 1125 Should Be Dismissed

SDJ alleges "MCoBeauty's manufacture, advertisement, distribution, sale, and/or shipment of the [MCoBeauty Mists] unfairly and willfully infringes the Sol de Janeiro Trade Dress without [SDJ]'s consent or authorization." AC, ¶ 85. Trade dress, protectable under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), is the "overall design and appearance that makes the product identifiable to consumers." *Carson Optical, Inc., v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 339 (E.D.N.Y. 2014) (citing *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 118 (2d. Cir. 2001)). Although SDJ refers to "trademark infringement" in the title of Count II

of the AC, it clearly refences 15 U.S.C. § 1125 and pleads, "The packaging and presentation of the [MCoBeauty Mists] unfairly and unlawfully infringe and copy *the overall look and feel of the Sol de Janeiro Trade Dress*, including but not limited to the non-functional aspects of the Sol de Janeiro Trade Dress." AC at ¶ 87 (emphasis added). To prove trade dress infringement involving the overall appearance of a product:

> [A] plaintiff must offer: (1) 'a precise expression of the character and scope of the claimed trade dress.' A plaintiff seeking relief for trade dress infringement must also allege that (2) the claimed trade dress is non-functional; (3) the claimed trade dress has secondary meaning; and (4) there is a likelihood of confusion between the plaintiff's goods and the defendant's.

*Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 46 (2d Cir. 2018) (internal citations omitted). SDJ has failed to sufficiently plead any of these required elements.

### ***1. SDJ Did Not Articulate Its Trade Dress With Specificity***

To state a claim for trade dress infringement, a plaintiff must provide "a precise expression of the character and scope of the claimed trade dress" and articulate the elements of design with specificity. *Landscape Forms*, 113 F.3d at 381–82. Specificity is shown by "articulat[ing] the design elements that compose the trade dress." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001).

SDJ's assertion of its trade dress rights are based on unregistered trade dress; the AC does not allege that SDJ ever attempted to register its trade dress with the United States Patent and Trademark Office. Courts "exercise particular caution when extending protection to product designs" such as the design SDJ alleges. *Yurman Design, Inc.*, 262 F.3d at 114 (internal quotation marks omitted). "Unlike patent and copyright law, which 'bestow limited periods of protection,' trademark protection is open-ended. It is 'not intended to protect innovation by giving the innovator a monopoly over a useful product feature.'" *Eliya, Inc.*, 749 F. App'x at 46 (internal citations omitted).

SDJ claims trade dress rights "in the combination of its unique bottle, cap, and label, including its unique use and selection of elements, text, and graphics." AC at ¶ 22. It identifies its trade dress as "includ[ing] the combination of the following elements:

a. An elongated translucent bottle with an elongated opaque white cap;

b. The elongated, opaque, cylindrical white cap has stylized wording in the same white color embossed on the cap;

c. The elongated opaque white cap includes a diamond or rhombus shape with letters or words inside the shape;

d. The geometric shape outline on the elongated, translucent bottle (below the cap) which stretches from one side to the other of the bottle when viewed from the front;

e. Inside the oval on the elongated bottle at the top of the oval are the stylized words "Sol de Janeiro" or "Brazilian Crush" in white font;

f. Inside the oval on the elongated bottle below the text and approximately in the center of the oval are numbers in script font in larger font size than the words above it and below it;

g. The smaller text below the numbers is also in white font and contains a description of the fragrance profile;

h. No writing, font or graphic elements appear on the bottle underneath or otherwise outside of the label; and

i. A different colored translucent bottle is used for each different fragrance."

*Id.* at ¶ 23. SDJ explains that these elements "collectively are the 'Sol de Janeiro Trade Dress." *Id.* at ¶ 24.

The elements of SDJ's claimed trade dress do not provide "a precise expression of the character and scope of the claimed trade dress." *Landscape Forms*, 113 F.3d at 381. A plaintiff seeking trade dress protection must "be able to point to the elements and features that distinguish its trade dress." *Yurman Design, Inc.*, 262 F.3d at 117. SDJ, however, relies on nonspecific terms like "elongated, opaque, cylindrical white cap" with "stylized wording" (element b); a cap that "includes a diamond or rhombus shape with letters or words inside the shape (element c); a

"geometric shape outline" (element d); "white font" (element e); "script font" (element f); "different colored translucent bottle" (element i). AC, ¶ 23. Generic descriptions of a "geometric shape" or an "elongated bottle" using "white font" in various text sizes could describe a variety of product appearances. Further, the images provided in the AC, which SDJ does not claim should be incorporated into its identification of its claimed trade dress do not embody all of these elements (for example, the images do not depict "a description of the fragrance profile" as specified in element (g)).

Adequately alleging the character and scope of a claimed trade dress, "requires more than just providing a 'laundry list' of the elements that constitute the product's design; [p]laintiff must allege how those elements are distinctive." *Caliko, SA v. Finn & Emma, LLC,* No. 21-CV-3849 (VEC), 2022 WL 596072, at *11 (S.D.N.Y. Feb. 28, 2022). The Second Circuit "clarified that it is often a combination of components, rather than individual ones, that make up the overall look of a product and that renders the product's trade dress protectable" and "stressed the importance of articulating each of those components with precision and specificity." *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 122-23 (2d Cir. 2025). Instead of adhering to the Second Circuit's guidance, SDJ's list of elements reads as if SDJ defined its claimed trade dress by identifying what could be perceived as in common with the appearance of the MCoBeauty Mists, assuming a finding of infringement rather than describing its own product (*e.g.*, use of the term "geometric shape outline" when the SDJ products clearly use an oval, but the MCoBeauty Mists display a label including a rectangle). "A precise articulation of the claimed trade dress provides a crucial guidepost for courts and juries to evaluate the merits of an infringement claim." *Cardinal Motors*, 128 F.4th at 123. Having pled only generic elements, SDJ has not sufficiently identified its claimed trade dress with precision and specificity.

### *2. SDJ Failed To Allege Its Claimed Dress Is Non-Functional*

"Plaintiffs bear the burden of proving the alleged trade dress is non-functional, 15 U.S.C. § 1125(a)(3), and there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection," *Carson Optical, Inc.*, 11 F. Supp. 3d at 340 (citing *TrafFix Devices, Inc.*, 532 U.S. at 29.) SDJ makes only two references to non-functionality in its AC:

> 21. The look of the Sol de Janeiro products pictured above in Paragraph 18 is distinctive, non-functional and uniquely and solely associated with Sol de Janeiro," and
>
> 87. The packaging and presentation of the [MCoBeauty Mists] unfairly and unlawfully infringe and copy the overall look and feel of the Sol de Janeiro Trade Dress, including but not limited to the non-functional aspects of the Sol de Janeiro Trade Dress.

AC at ¶¶ 21, 87. Both of these references are unsupported conclusions. This District dismissed a trade dress infringement claim in part due to the plaintiff's failure to adequately plead non-functionality, noting "[plaintiff] has made only conclusory allegations about the lack of functionality of its claimed trade dress. Asserting in an entirely conclusory way that unspecified aspects of its product trade dress are 'non-functional,' and describing the product trade dress as 'non-functional as it does not have any utility' do not satisfy the pleading standard of *Iqbal*." *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-CV-7712 (VEC), 2022 WL 3227861, at *5 (S.D.N.Y. Aug. 10, 2022), *aff'd in part, vacated in part, remanded*, No. 22-1965, 2024 WL 89120 (2d Cir. Jan. 9, 2024). The court found that the plaintiff "entirely failed to plead facts from which the Court could plausibly infer that its purported trade dress is non-functional." *Id.* SDJ's Amended Complaint suffers the same deficiency, failing even to allege the lack of utility that the plaintiff in *APP Grp. (Canada) Inc.* averred.

### *3. SDJ Failed To Include Facts Establishing Secondary Meaning*

"A product's appearance has acquired secondary meaning when 'in the minds of the public, the primary significance of the product feature is to identify the source of the product rather than the product itself.'" *APP Grp. (Canada) Inc.*, No. 21-CV-7712 (VEC), 2022 WL 3227861, at *4. Just as with non-functionality, the Amended Complaint offers no facts suggesting that SDJ's claimed trade dress has acquired secondary meaning. SDJ merely makes the conclusory allegation, "The Cheirosa Body Mists Products bear a unique and distinctive look that is recognized by consumers as indicating the source of these products as Sol de Janeiro." AC, ¶ 20. This is insufficient. To satisfy *Twombly*'s plausibility standard, "a complaint must include sufficient facts to support an inference of secondary meaning." *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017).

SDJ pleads no facts specific to its claimed trade dress that are responsive to factors the courts utilize in determining whether a trade dress has secondary meaning. *See Id.* (listing factors). Rather, the AC touts the success of the "*Sol de Janeiro Products*" generally, defined as SDJ's "premium quality skin, hair, and body care products." AC, ¶ 9; *see also id.*, ¶¶ 14-17 (overall marketing expenditures and brand success), 32-36 (addressing Sol de Janeiro's registered trademarks and the "Sol de Janeiro Products"). To plead secondary meaning of a trade dress, there must be facts alleged regarding the *trade dress specifically*, not the plaintiff's commercial activity generally. *See Carson Optical, Inc.*, 11 F. Supp. 3d at 343-345 (rejecting plaintiff's amended complaint because its averments were not linked to the claimed trade dress) (collecting cases). In *Carson Optical*, the court held:

> [P]laintiffs' general and cursory allegations that Carson has sold, marketed and promoted the [claimed trade dress] design since 1998, has spent substantial sums of money advertising the product design and that these designs have been a sales and marketing success, with no factual enhancement linking the claimed trade dress

> to Carson, fail to support an inference that SureGrip™ has acquired secondary meaning.

*Id.* at 344-45; *see also APP Grp. (Canada) Inc.*, No. 21-CV-7712 (VEC), 2022 WL 3227861, at *4 (*rejecting* plaintiff's trade dress infringement claim for its failure to link commercial success to the claimed trade dress). SDJ, too, failed to link any of its success to the claimed trade dress of its fragrance mists, and thus has failed to sufficiently plead that the claimed trade dress has acquired secondary meaning.

#### ***4. The Amended Complaint Underscores That Consumers Are Not Confused***

The "crucial issue in an action for trademark infringement … is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 329 (S.D.N.Y. 2023) (citing *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004). "To determine likelihood of confusion, courts in this Circuit consider the factors established in *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)." *Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 547 (S.D.N.Y. 2018). The *Polaroid* factors[9] are relevant at the pleading stage; the *Phoenix Entertainment Partners* court considered whether plaintiff's trademark infringement claims sufficiently addressed the factors, and finding that they did not, granted defendant's motion to dismiss. *See* 305 F. Supp. 3d at 547. MCoBeauty asks this Court to do the same and submits that the analysis here will be swift; rather

---

[9] The *Polaroid* factors are (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Polaroid Corp.*, 287 F.2d at 495.

than demonstrate likelihood of consumer confusion, SDJ does no more than show repeated images of its products next to MCoBeauty's products, accusing MCoBeauty of "unfairly and willingly" copying SDJ. *See* AC, ¶¶ 85-88 and pages 19-34, generally. SDJ's unhappiness with being "copied," however, is irrelevant to whether consumers are likely to be confused or misled as to the source of the goods in question.

"Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc.*, 532 U.S. at 29. "The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998). "There is an essential distinction between a deliberate attempt to deceive and a deliberate attempt to compete. Absent confusion, imitation of certain successful features in another's product is not unlawful and to that extent a 'free ride' is permitted." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1541 (2d Cir. 1992). Section 43 of the Lanham Act is not concerned with copying, it is concerned with whether "uses in commerce [of] any word, term, name, symbol, or device, or any combination thereof" is "likely to cause confusion, or to cause mistake, or to deceive" as to affiliation, connection, or source. 15 U.S.C. § 1125(a)(1)(A). The facts alleged in the Amended Complaint clearly show that consumers are ***not*** confused by the MCoBeauty Mists.

The three examples SDJ provides to support its false advertising claim as well as the handful of consumer comments SDJ selected to suggest that consumers "see the [MCoBeauty Mists] as "an infringing copy of the Sol de Janeiro Trade Dress" reveal that consumers understand that the MCoBeauty Mists are lower-priced alternatives to SDJ's more expensive products. *See* AC, ¶¶ 55-84, 95. As SDJ itself highlights, the @laurenilord video and the @trendmood1

Instagram post make "side-by-side comparisons" of the two products. *Id.*, ¶¶ 56, 66, 68. The images SDJ elected to include in its pleading present this comparison to the Court the way that viewers would see it on social media, with both products visible at the same time, in contrast to each other. *Id.*, ¶¶ 56, 66, 68. The transcripts SDJ attached as exhibits to the AC disclose that the social media influencers describe the MCoBeauty Mists as competing alternatives to the SDJ Mists at half the price, and the @trendmood1 post and voiceover specifically call the MCoBeauty Mists "dupes." *See* Dkt. 41-1; Dkt. 41-3. As the comments and reviews in SDJ's twenty-six-page Exhibit B and eighteen-page Exhibit D show, consumers are keenly aware both of the concept of "dupes" and that MCoBeauty's fragrance mists are dupes of Sol de Janeiro's. *See* Dkt. 41-2, AC Exhibit B (@trendmood1 Instagram post and comments) and Dkt. 41-4, AC Exhibit D (product listings on the MCoBeauty website and customer comments). By submitting these exhibits SDJ has unwittingly provided pages and pages of actual feedback from consumers and potential consumers. Many commenters and reviewers may express disapproval of MCoBeauty's products or dupes in general, but **<u>none of them</u>** express confusion.

SDJ has alleged no fact suggesting that consumers are or will be confused. Rather, SDJ has alleged facts demonstrating that consumers are not confused, a reality, should this case proceed to discovery, with which it will have to reckon if it expects to ultimately succeed. Here at the pleading stage, however, SDJ has failed to establish the elements of trade dress infringement and this claim should be dismissed.

### D. SDJ's Count III, Violation Of New York Gen. Bus. Law § 349 Should Be Dismissed

SDJ offers no additional facts in support of its claim under Section 349 of the New York General Business Law other than what it offered for its Lanham Act claims. *See* AC, ¶¶ 117 ("[SDJ] incorporates by reference the allegations set forth in the preceding paragraphs as if fully

rewritten here.”), 118 (“By reason of the acts set forth above, MCoBeauty has been and is engaged in deceptive acts or practices [in violation of Section 349]”). Just as SDJ’s Lanham Act claims fail, so does its claim under New York state law.

“A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.” *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 329 (S.D.N.Y. 2015). “The gravamen of a section 349 [] claim is ‘consumer injury or harm to the public interest.’” *Id.* at 330. For claims related to false advertising, “the harm arising from the advertising must be sufficiently directed or borne by consumers in order to meet the consumer-oriented prong.” *Lokai Holdings LLC*, 306 F. Supp. 3d at 642. “It is well-settled [] that trademark or trade dress infringement claims are not cognizable under [New York GBL § 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution.” *National Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2002). Section 349 “require[s] the sort of offense to the public interest which would trigger FTC intervention under 15 U.S.C. § 45.” *Id.* at 487.

This District has advised:

> Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements [for a claim arising under Section 349].

*Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 432 (S.D.N.Y. 2022) (internal citations omitted). In *Walker Wear*, the court granted a motion to dismiss a Section 349 claim where the plaintiff did no more than offer a “conclusory allegation that ‘defendants’ consumer-oriented conduct has adversely affected the public interest and has resulted in injury to consumers in

New York," finding that allegation "plainly insufficient to support an inference that the gravamen of plaintiff's claim is harm to the public, rather than harm to [the plaintiff]." *Id.*

Here, SDJ did not plead adverse effect to the public interest – a fatal flaw to its claim. The sum and substance of its allegation of harm related to its Section 349 claim is "MCoBeauty's conduct has caused and is causing immediate and irreparable injury to Sol de Janeiro and will continue to both damage Sol de Janeiro and deceive the public unless enjoined by this Court." AC, ¶ 122. Thus, the only "harm" SDJ pleads is its own; there is no allegation whatsoever concerning harm to consumers or the public. *See Lifeguard Licensing Corp. v. Gogo Sports, Inc.*, No. 10-CV-9075 PAC, 2013 WL 4400520, at *8 (S.D.N.Y. Aug. 15, 2013) ("for [Section 349] to apply, a plaintiff must establish a direct harm to consumers that is greater than the general consumer confusion commonly found in trademark actions, such as potential danger to the public health or safety"); *New World Sols., Inc.*, 150 F. Supp. 3d at 331 (quoting same); *see also id.* at 330 (a violation of section 349 "requires that the defendant's conduct deceives a reasonable consumer in a material respect, work a harm to the public at large, and directly cause the plaintiff's injury"); *Designers North Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193, 198 (E.D.N.Y. 2001) (dismissing § 349 claim where plaintiff made only the conclusory allegation that "the unlawful actions of the defendant have caused damage and injury to both the plaintiff herein and to its consumer customers"); *NYU Langone Health Sys.*, 2024 WL 898941, at *7 (dismissing § 349 claim where plaintiff alleged in a conclusory manner that defendant's "conduct has resulted, or is likely to result, in consumer injury or harm to the public interest," and noting that "implicating the public interest does not equate to injuring the public interest"); *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 250 (S.D.N.Y. 2013) ("Plaintiff alleges S & N deceived the FDA, but he does not explain how this allegedly improper conduct was 'consumer-oriented.' And plaintiff fails to

provide more than a conclusory statement that the allegedly undisclosed facts were material. Hence, Plaintiffs' GBL § 349 claim is dismissed").

Should SDJ respond that it has adequately pled injury to the public because it alleged a likelihood that consumers are confused or deceived, that argument should be rejected. In *Donahue v. Ferolito, Vultaggio & Sons*, the New York Supreme Court Appellate Division affirmed dismissal of a Section 349 claim where plaintiffs "failed to establish any actual damages resulting from defendants' alleged deceptive practices and false advertising." 13 A.D.3d 77, 78, 786 N.Y.S.2d 153 (2004). The *Donahue* plaintiff pled that labels on beverages deceived consumers by making health claims, but the product provided no health benefits. *Id.* The court observed that the plaintiffs "never alleged, however, that the cost of the beverages was inflated by these misrepresentations or that their health was adversely affected by drinking the beverages. Thus, *they have impermissibly set up the deception as both act and injury, a theory specifically rejected by our courts*." *Id.* (emphasis added); *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-56 (1999) (rejecting plaintiff's "flawed deception as injury theory" and noting "[i]ntent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim. However, proof that 'a material deceptive act or practice *caused actual, although not necessarily pecuniary, harm*' is required to impose compensatory damages." (emphasis in original)).

Finally, courts have held that GBL § 349 includes a "territorial test;" "to state a claim under the statute, the deception of a consumer must occur in New York." *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 223–24 (S.D.N.Y. 2019) (citing *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167 (S.D.N.Y. 2014). The court in *Ward*, citing a New York Court of Appeals decision, recognized the language of GBL § 349 as "evincing a legislative intent to address commercial misconduct occurring within New York." 3 F. Supp. 3d at 167; *see also Goshen v. Mut. Life Ins.*

*Co. of New York*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195 (2002) ("We conclude that the transaction in which the consumer is deceived must occur in New York"). SDJ failed to plead any facts to invoke GBL § 349 for the purpose of redressing alleged deceptive acts that occurred in New York. *See* AC, generally. Thus, SDJ has failed to satisfy Section 349's territorial test.

SDJ's third count, alleging violation of New York GBL § 349, lacks sufficient factual support and should be dismissed.

## V. **CONCLUSION**

SDJ's Amended Complaint presents a series of conclusions but omits factual allegations that allow the Court to accept that SDJ's claims are plausible. For the foregoing reasons, MCoBeauty respectfully requests that this Court dismiss all claims in SDJ's Amended Complaint with prejudice.

Dated: January 27, 2026

Respectfully submitted,

**POLSINELLI PC**

*/s/ Emily C. McNally*

Michelle G. Bernstein
315 Biscayne Boulevard, Suite 400
Miami, FL 33131
(305) 921-1800
mbernstein@polsinelli.com
cmoreno@polsinelli.com

Emily C. McNally (admitted *pro hac vice*)
1000 Second Avenue, Suite 3500
Seattle, WA 98104
(206) 393-5400
emcnally@polsinelli.com

*Counsel for Defendants MCoBeauty Pty Ltd and MCoBeauty, Inc.*

The above signatory certifies that this Memorandum contains 8,009 words, in compliance with Local Civil Rule 7.1(c), and is within twenty-five pages, in compliance with Section 2(B) of this Court's Individual Practices.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed with the Clerk of the Court on January 27, 2026 using the CM/ECF System, which will send notification of such filing to all registered ECF users, including all attorneys of record.

By: *\/s/ Emily C. McNally*
Emily C. McNally