UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOL DE JANEIRO USA, INC. *and*
SOL DE JANEIRO IP, INC.,

Plaintiffs,

*– against –*

MCOBEAUTY PTY LTD *and*
MCOBEAUTY, INC.,

Defendants.

**OPINION & ORDER**

24-cv-8862 (ER)

RAMOS, D.J.:

Sol De Janeiro USA, Inc. and Sol De Janeiro IP, Inc. (collectively, "Sol de Janeiro"), cosmetics distributors and retailers, bring this action against MCoBeauty Pty Ltd and MCoBeauty, Inc. (collectively, "MCoBeauty"), a rival in the cosmetics market, alleging that MCoBeauty engaged in false advertising, trade dress infringement, and unfair competition by copying Sol de Janeiro's fragrance mist products, in violation of the Lanham Act and New York General Business Law. ¶¶ 109, 113, 118.[1] Sol de Janeiro demands MCoBeauty pay damages, stop discussing and selling the products, remove and destroy anything related to the products, and issue corrective advertising related to the products.

Before the Court is MCoBeauty's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 48. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

[1] Unless otherwise noted, citations to "¶ ___" refer to the amended complaint, Doc. 41.

# I. BACKGROUND

## A. Factual Background

Unless otherwise noted, the following facts are taken from the allegations in the complaint, which the Court accepts as true for purposes of this motion. *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

*Sol De Janeiro Products*

Sol de Janeiro is a distributor and retailer of skin, hair, and body care products. ¶¶ 9–10, 18. Sol de Janeiro sells products at physical retailers including Sephora and Ulta Beauty, and on websites including its own, Amazon, and Asos. ¶ 34. At issue are nine Sol de Janeiro Cheirosa Perfume Mists, Nos. 40, 48, 57, 59, 62, 68, 71, 76, and 87 ("Sol de Janeiro Mists"). ¶¶ 45–52, 89, 103.

The Sol De Janeiro Mists are sold in an elongated translucent bottle with an elongated opaque white cap. ¶ 23. More specifically, they are contained in bottles, pictured below, and described as follows: the elongated, opaque, cylindrical white cap has stylized wording in the same white color embossed on the cap; the cap includes a diamond or rhombus shape with letters or words inside the shape; the geometric shape outline on the elongated, translucent bottle (below the cap) which stretches from one side of the bottle to the other when viewed from the front; inside the oval on the elongated bottle at the top of the oval are the stylized words "Sol de Janeiro" or "Brazilian Crush" in white font; inside the oval on the elongated bottle below the text and approximately in the center of the oval are numbers in script font in larger font size than the words above it and below it; the smaller text below the numbers is also in white font and contains a description of the fragrance profile; no writing, font, or graphic elements appear on the bottle underneath or otherwise outside of the label; and a different colored translucent bottle is used for each of the nine fragrances. ¶ 23.




¶ 86.

Sol de Janeiro owns three trademarks in relation to the description of the bottles pictured above. ¶¶ 27–29. It asserts that the bottles' design is synonymous with Sol de Janeiro, ¶¶ 20–21, and that it has made substantial investments in advertising and promoting its products in the U.S, ¶ 15. Since 2020, Sol de Janeiro has sold over 100 million units of beauty and cosmetic products, including the Sol de Janeiro Mists. ¶ 14. In 2023, the company had a 174% sales increase in a six-month period, including over 19% in the third quarter. ¶¶ 14–15. Sol de Janeiro has won several awards for its beauty products, including the 2015 Latina Beauty Award; the 2025 Allure Reader's Choice Award for Body; two nominations in the 2024 Fragrance Foundation Awards; status as one of Women's Wear Daily Beauty Inc.'s 2024 and 2025 Most Powerful Beauty Brands; and Sephora's 2023 biggest seller in body care. ¶ 16. Sol de Janeiro has a high number of social media followers and sales in the United States. ¶ 17.

*MCoBeauty Products*

MCoBeauty is an Australian beauty brand that sells body and hair fragrance products online at its website and Amazon, and at popular retailers—some in New York—such as Kroger, Walgreens, Target, and Fred Meyer. ¶¶ 38, 42, 44; Docs. 49 at 9, 53 at 15. MCoBeauty sells Fragrance and "Jumbo" Mists, Nos. 0, No. 1, No. 2, No. 3,

No. 4, No. 5, No. 6, No. 7, No. 8 (Fragrance Mist only), No. 9 (Fragrance Mist only), No. 10 (Fragrance Mist only), and No. 11 (Fragrance Mist only) ("MCoBeauty Mists," and together with Sol de Janeiro Mists, the "Mists"). ¶¶ 43, 54, 103. MCoBeauty Mists are packaged in distinctly colored bottles with prominently-displayed numbers in white script font within thin elongated geometric designs, and elongated caps, as pictured below. ¶¶ 86–89, 94, 103.




¶ 86.

MCoBeauty states that its products "offer consumers the performance and feel of high-end, designer brands without the high-end price tag." Doc. 49 at 8. MCoBeauty describes itself, including on its website, "as a company engaged in the sales of affordable alternatives to luxury products." Doc. 52 at 9. Further, MCoBeauty acknowledges the "dupe" culture that many associate with the company, stating that dupe products "offer comparable aesthetics or functionality to higher-priced goods at a more accessible price point." *Id.* at 7. MCoBeauty further details that "[e]ncouraged by social media influencers and viral posts, consumers actively seek out lower-cost alternatives to

expensive luxury brands, and retailers routinely market products that evoke popular trends." *Id.* MCoBeauty thus at least implicitly concedes that its mists are intended to be dupes of the Sol de Janeiro Mists.

MCoBeauty advertises its products by, among other things, posting pictures and videos online, recruiting third-party ambassadors and collaborators, commenting on online content that mentions their products, and allowing online reviews on their website. ¶¶ 39–40, 76, 80. On MCoBeauty's website, when a consumer types the words "Sol" and "Sol de Janeiro" into a search bar, the website produces results for MCoBeauty's products, including MCoBeauty Mists. ¶ 97.[2] In other words, when consumers search for Sol de Janeiro on MCoBeauty's website, they get results for MCoBeauty Mists, but not Sol de Janeiro Mists because MCoBeauty does not sell them. In advertisements and reviews, MCoBeauty, influencers, ambassadors, and reviewers compare MCoBeauty Mists to Sol de Janeiro Mists, describing how the packaging and scents are similar. ¶¶ 56, 66, 68, 70, 95. Online posts and comments identify MCoBeauty products as "dupes" of Sol de Janeiro products. Docs. 41-2 at 2 (an Instagram post, picturing both a Sol de Janeiro Mist and a MCoBeauty Mist, stating a "dupe for the mist we all love"); 41-4 at 17 (a customer review of the MCoBeauty Mist, stating that the product is "meant to be a dupe of" the Sol de Janeiro Mist).

In February 2024, MCoBeauty posted a video advertisement on YouTube of a MCoBeauty Mist. ¶ 55. The advertisement features a social media influencer's side-by-side comparison of MCoBeauty Mist No. 1 to Sol de Janeiro Mist 40. ¶ 56. A picture of the two products is below:

[2] Sol de Janeiro states that MCoBeauty "us[es]" the words on its website, ¶ 97, but the Court understands that the words do not appear on MCoBeauty's website unless a consumer types them into a search bar, as pictured in ¶ 97.

| MCoBeauty Fragrance Mist No. 1 | Sol de Janeiro Cheirosa Perfume Mist 40 |
| --- | --- |
|   |   |

¶ 86.

The influencer, using the handle "@laurenilord," states that the MCoBeauty Mist "smell[s] exactly" like the Sol de Janeiro Mist and the MCoBeauty Mist "will last most if not all day long" and "hold[s] better than" the Sol de Janeiro's Mist. ¶¶ 55, 57–58. The influencer places the bottles in front of her, and states that the Sol de Janeiro Mist "has scents of black amber plum and vanilla woods" and the MCoBeauty Mist "has scents of black plum and vanilla." Doc. 41-1 at 2.

On June 18, 2024, another social media influencer and ambassador or collaborator with MCoBeauty, using the handle "@trendmood1," posted an Instagram video comparing MCoBeauty Mists with Sol de Janeiro Mists. ¶¶ 62–64. The influencer describes the Mists, stating that they had similar scent notes, and that the MCoBeauty Mists' scents "last all day." ¶¶ 62, 70–71. MCoBeauty liked the post and commented "Love it!" with a heart-eyes smiley emoji. ¶ 76.

The product reviews on MCoBeauty's website include comments that suggest that customers are aware that the MCoBeauty Mists are meant to be duplicates or copies of

Sol de Janeiro Mists and smell the same. ¶ 80–81, 95. Some comments state that MCoBeauty's "packaging [is] very similar to the real one" but that MCoBeauty Mists' "[s]cent is a little off and watered down." ¶ 95. Another comment states that the MCoBeauty Mists "smell[] exactly like" Sol De Janeiro Mists. ¶ 81. MCoBeauty's review team monitors the reviews but allows reviews mentioning Sol de Janeiro Mists to remain on the website. ¶ 82–83.

### B. Procedural History

Sol de Janeiro filed the instant lawsuit on November 20, 2024, Doc. 1, and an amended complaint on November 25, 2025, Doc. 41. Sol de Janeiro alleges three claims: false advertising in connection with commercial advertising and promotion in willful and intentional violation of § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a) (Count I); trademark infringement pursuant to 15 U.S.C. § 1125 (Count II); and a violation of the New York Unfair Trade Practices Act pursuant to N.Y. Gen. Bus. Law § 349, *et seq.* (Count III). ¶¶ 105–122.

Defendants moved to dismiss the amended complaint in its entirety on January 27, 2026, arguing that each allegation fails to state a claim. Doc. 49 at 7.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. STANDING

MCoBeauty alleges Sol de Janeiro lacks standing because it pleads only hypothetical or abstract harm rather than concrete and particularized harm, and does not allege facts regarding causation. Doc. 49 at 11–12. Sol de Janeiro argues that it has standing because it has suffered a loss of customers and sales caused by MCoBeauty's advertising, promoting, and sharing of statements about Sol De Janeiro Mists. ¶¶ 95, 99, 108; Doc. 53 at 13. Sol de Janeiro also alleges that its current or potential consumers have been tricked into buying MCoBeauty Mists, and have been disappointed by the alleged duplicates. ¶ 95; Doc. 53 at 19. For the following reasons, the Court agrees with Sol de Janeiro.

Pursuant to Article III of the U.S. Constitution, in order to have standing a plaintiff "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). Further, a plaintiff must show "economic or reputational injury [that] flows directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. As discussed more fully below, Sol de Janeiro has alleged injury that was caused by MCoBeauty's use of similar dress elements and marketing. Specifically, Sol de Janeiro alleges that it has been harmed because it lost customers and sales because consumers were confused by MCoBeauty's comparison of its Mists to Sol De Janeiro Mists. *See* ¶¶ 55–61, 64, 71–73, 81–83, 95–96. These harms satisfy the requirement to demonstrate economic and

reputational injury. Thus, Sol de Janeiro has alleged sufficient harm to have standing to bring the claims.

## IV. FALSE ADVERTISING

To state a false advertising claim pursuant to § 43(a) of the Lanham Act, a plaintiff must plausibly allege both the falsity and materiality of the challenged statement. *Skillz Platform Inc. v. Papaya Gaming, Ltd.*, No. 24 Civ. 1646 (DLC), 2024 WL 3526853, at *2 (S.D.N.Y. July 23, 2024) (quoting *International Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 56 (2d Cir. 2022)). "The plaintiff must also plausibly allege injury as a result of the defendant['s] false statements." *Id.*

A plaintiff can demonstrate falsity by showing that the challenged statements are either literally false or are likely to mislead and confuse consumers. *Perrin & Nissen Ltd. v. SAS Group Inc.*, No. 6 Civ. 13089 (MGC), 2009 WL 855693, at *9 (S.D.N.Y. Mar. 27, 2009) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). "A message can only be literally false if it is unambiguous." *Skillz*, 2024 WL 3526853, at *2 (citations omitted). "Subjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act." *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (citations omitted).

"A plaintiff can plead materiality by demonstrating that the defendants' 'false or misleading representation involved an inherent or material quality of the product.'" *Skillz*, 2024 WL 3526853, at *2 (citations omitted).

The amended complaint alleges that the following are among MCoBeauty's false and misleading representations:

1. A video posted to MCoBeauty's YouTube channel ("YouTube Video") in which an influencer states that a MCoBeauty Mist "smell[s] exactly" like the Sol de Janeiro Mist and the MCoBeauty Mist "will last most if not all day long" and "hold[s] better than" the Sol de Janeiro Mist. ¶¶ 55, 57–58. The influencer states that the Sol de Janeiro Mist "has scents of black amber plum and vanilla woods" and the MCoBeauty Mist "has scents of black plum and vanilla." Doc. 41-1 at 2.

2. A video on Instagram sponsored by MCoBeauty ("Instagram Video") in which an influencer compares the two Mists, stating that the Mists had similar scent notes and MCoBeauty Mists' scents "last all day." ¶¶ 62, 70–71.
3. Reviews on MCoBeauty's website ("Website Reviews") which state that the MCoBeauty Mists "smell[] exactly like" Sol De Janeiro Mists. ¶ 81.
4. Search results yielding MCoBeauty products for the words "Sol de Janeiro" and "Sol" on MCoBeauty's website ("Keywords"), which suggest that MCoBeauty is affiliated with Sol de Janeiro—either by selling Sol de Janeiro Mists or via sponsorship from Sol de Janeiro—even though the two companies are not affiliated, and MCoBeauty does *not* sell Sol de Janeiro Mists. ¶ 97.

Sol de Janeiro contends that all the foregoing statements are "literally false" because MCoBeauty Mists and Sol De Janeiro Mists (a) are not produced with the same materials, (b) do not present the exact same fragrances, and (c) do not dissipate at the same rate. ¶¶ 84, 107; Doc. 53 at 17–18. Sol de Janeiro also contends that the statements are misleading. ¶ 106; Doc. 53 at 18. MCoBeauty argues that the amended complaint is silent as to the materials, fragrances, and dissipation of scents, and that the statements on their face are subjective opinions or puffery. Doc. 49 at 16–18.

**A. The Social Media Statements Are Not Sufficiently Pleaded as False**

"[S]tatements of opinion are generally not the basis for Lanham Act liability." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995). The Lanham Act "applies only to statements that assert or imply provable facts." *Casper Sleep, Inc. v. Hales & Halesopolis LLC*, No. 16 Civ. 03223 (CM), 2016 WL 6561386, at *5 (S.D.N.Y. Oct. 20, 2016) (citing *Groden,* 61 F.3d at 1051). The YouTube Video, Instagram Video, and Website Reviews, on their face, discuss the reviewers' opinions of the virtues or vices of the products and how one company's fragrance compares to another. For instance, the influencer in the YouTube Video states that the MCoBeauty Mist "smell[s] exactly" like the Sol de Janeiro Mist and the MCoBeauty Mist "will last most if not all day long" and "hold[s] better than" the Sol de Janeiro Mist. ¶¶ 57–58. Sol de Janeiro alleges that the video misrepresented the inherent quality or characteristic of the Sol de Janeiro Mists because of the materials, fragrances, and dissipation of their products. ¶ 61. Both Sol de

Janeiro and MCoBeauty discuss *Casper*, 2016 WL 6561386, which is instructive in analyzing whether the statements are opinions.

In *Casper*, a mattress company alleged that an online reviewer's statements about its mattresses were false. *Id.* at 5–6. The reviewer had business relationships with other mattress companies, and his reviews were structured as comparisons and included purported facts. *Id.* Just as Sol de Janeiro does not dispute that the Sol de Janeiro Mist in the YouTube Video has a scent profile of "black amber plum and vanilla woods" or that the MCoBeauty Mist in the video has a scent profile of "black plum[] and vanilla," Doc. 41-1 at 2, the mattress company did not dispute that the competitor's mattress "contain[ed] a hyper-elastic polymer top over multiple layers of polyurethane foam," *Casper*, 2016 WL 6561386, at *6. However, the plaintiff in *Casper* did dispute the reviewer's statement that the competitor's mattress thus had "a more supportive, cooler and higher performance mattress than the Casper" mattress, *id.*, just as Sol de Janeiro disputes the comparison of its Mists to the MCoBeauty Mists based on materials, fragrances, and dissipation, Doc. 53 at 17–18. Just as in *Casper*, these are opinions. *See Casper*, 2016 WL 6561386, at *6. The *Casper* court determined that "a sleeper's experience of the supportiveness and coolness of a mattress cannot be objectively verified," *id.*, and so too here, even a master perfumer's experiences of the scent profiles of different products cannot be objectively verified. *See also Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018) ("[I]f the representation 'is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false . . . .'" (quoting *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 450 (S.D.N.Y. 2012)).

The Instagram Video and Website Reviews contain substantially similar statements compared to the YouTube Video; all are centered on the individual's experience of the scents. ¶¶ 55, 57–58, 62, 70–71, 81, 97; Doc. 41-1 at 2. The Instagram Video, Website Reviews, and YouTube Video are statements of opinion, not actionable

false or misleading statements. *Groden*, 61 F.3d at 1051; *Lipton*, 71 F.3d at 474; *Time Warner Cable*, 497 F.3d at 160.

**B. The Allegations Concerning the Use of Keywords Are Sufficiently Pleaded to be False and Injurious**

The use of Keywords is different from the YouTube Video, Instagram Video, and Website Reviews, as the Keywords themselves do not implicate the materials, fragrance, or dissipation of the products. The Keywords are also not opinion or puffery, as they do not state a subjective claim. *See Casper*, 2016 WL 6561386, at *5; *Lipton*, 71 F.3d at 474. Instead, Sol de Janeiro alleges that "MCoBeauty intentionally attempts to confuse consumers by using" the Keywords on the MCoBeauty website. ¶ 97. In support, Sol de Janeiro argues that the Keywords falsely advertise that MCoBeauty sells Sol de Janeiro products or has a relationship with Sol de Janeiro, which injures Sol de Janeiro and consumers. ¶ 99; Doc. 53 at 18. MCoBeauty states that there can be "no plausible confusion" as to MCoBeauty's offerings of Sol de Janeiro products, or affiliation between the companies, because the consumers are navigating on MCoBeauty's website. Doc. 52 at 8–9.

The amended complaint sufficiently alleges that MCoBeauty's Keywords referencing Sol de Janeiro results in an impression that MCoBeauty has an affiliation with or sells Sol de Janeiro's products. ¶ 108.

MCoBeauty relies on *Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease & Related Disorders Association, Inc.* to argue that the Keywords referencing Sol de Janeiro on MCoBeauty's website "draw a clear distinction between the products and do not imply the trademark holder's sponsorship or approval." No. 10 Civ. 3314 (RWS), 2015 WL 4033019, at *6 (S.D.N.Y. June 29, 2015). MCoBeauty's reliance on *Alzheimer's Foundation* is misplaced. In *Alzheimer's Foundation*, and a similar case, *1-800 Contacts, Inc. v JAND, Inc.*, the courts found that where one party bought another party's trademark for use in search advertising, there was no violation of the Lanham Act.

*Alzheimer's Foundation*, 2015 WL 4033019, at *6; *1-800 Contacts, Inc. v JAND, Inc.*, 119 F.4th 234, 240 (2d Cir 2024). Search advertising is the practice in which advertisers pay for their products to be shown in response to online shoppers' search for a product or variations of a trademark on a search engine. *See 1-800 Contacts, Inc. v JAND, Inc.*, 119 F.4th 234, 240 (2d Cir 2024). In *1-800 Contacts*, Google was highlighted as the search engine, *id.*, and in *Alzheimer's Foundation*, Yahoo! was highlighted as the search engine, 2015 WL 4033019, at *6. In contrast, the Keywords in the present case are used directly on MCoBeauty's website, not a search engine. ¶ 97. Related to this distinction, MCoBeauty states that customers who already navigated to MCoBeauty's website will not be confused that MCoBeauty's products are not Sol de Janeiro's. Doc. 52 at 8–9. Courts in this district have not supported that conclusion. *See 1-800 Contacts*, 119 F.4th at 248 (citing *Australian Gold, Inc., v. Hatfield*, 436 F.3d 1228, 1240 (10th Cir. 2006) (holding that the use of a competitor's trademarks on a company's own website violated the Lanham Act)). Thus, Sol de Janeiro has plausibly alleged that MCoBeauty's use of the Keywords will cause customer confusion.

Sol de Janeiro also plausibly alleges that MCoBeauty's Keywords would likely impact consumers' decisions; they allege injury to their goodwill and sales. ¶ 108.

For these reasons, the Court finds that Sol De Janeiro has not sufficiently pleaded a Lanham Act claim for false advertising as to the YouTube Video, Instagram Video, and Website Reviews, but has sufficiently pleaded a Lanham Act claim for false advertising to survive dismissal as to the use of Keywords. Accordingly, MCoBeauty's motion to dismiss the false advertising claims is denied as to the Keywords, but granted as to the YouTube Video, Instagram Video, and Website Reviews.

## V. TRADE DRESS

Protection for trade dress exists to promote competition, because a product's packaging may "acquire a distinctiveness which serves to identify the product with its manufacturer or source." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23,

28–29 (2001) ("Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products."). "To plead a claim of trade dress infringement involving the overall appearance of a product, a plaintiff must offer (1) 'a precise expression of the character and scope of the claimed trade dress.' . . . [and] also allege that (2) the claimed trade dress is non-functional; (3) the claimed trade dress has secondary meaning; and (4) there is a likelihood of confusion between the plaintiff's goods and the defendant's." *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 46 (2d Cir. 2018) (first quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); and then citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115-16 (2d Cir. 2001)).

The amended complaint alleges that MCoBeauty infringes and unfairly copies Sol De Janeiro's trade dress, based on the MCoBeauty Mists' "coloring, packaging, bottling, labelling, and presentation." ¶ 86. Sol de Janeiro alleges that the MCoBeauty Mists unfairly mimic the distinctive colors of the Sol de Janeiro Mist bottles. ¶¶ 89, 103.

MCoBeauty states that Sol de Janeiro failed to meet the pleading standards by failing to articulate the trade dress with specificity, and failed to state that the claimed dress is non-functional, has a secondary meaning, and that there is a likelihood of confusion between the products. MCoBeauty highlights that the text of the reviews Sol de Janeiro uses to support its claims demonstrates that consumers are not confused and in fact understand that MCoBeauty Mists are "dupes" or "lower-cost alternatives" to Sol De Janeiro Mists. Doc. 49 at 26–27.

**A. Sol de Janeiro Has Sufficiently Articulated its "Look"**

"[I]t is often a combination of components, rather than individual ones, that make up the overall look of a product and that renders the product's trade dress protectable," though each component still needs to be articulated "with precision and specificity." *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 122–23 (2d Cir. 2025).

MCoBeauty states that Sol de Janeiro does not meet the so-called articulation requirement, because the images of its products included in the amended complaint may "bolster its articulation" of the trade dress but "do not relieve them of their obligation to precisely articulate the trade dress that they seek to protect." Doc. 52 at 10 n.5 (citing *Tentandtable.com, LLC v. Aljibouri*, No. 22 Civ. 78 (LJV), 2025 WL 959656, at *10 (W.D.N.Y. Mar. 31, 2025)). In other words, MCoBeauty argues that Sol de Janeiro doesn't sufficiently describe, in words, the unique look of the packaging of their Mists and instead relies too much on the pictures in the amended complaint. Sol de Janeiro states it adequately articulated the unique look of their Mists, established how the look was not functional but had a secondary meaning, and established a likelihood of confusion. Doc. 53 at 19–22.

In adjudicating a motion to dismiss, a court may consider the complaint, exhibits to the complaint, any statements or documents incorporated in it by reference, and documents integral to it. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). Accordingly, the Court may properly consider the exhibits attached to the amended complaint.

The images may indeed assist Sol de Janeiro in articulating the trade dress, but Sol de Janeiro also adequately articulates the trade dress using plain words. In response to a claim similar to Sol de Janeiro's, the Second Circuit found that the articulation of a helmet's trade dress was sufficient where its design elements were described as having, among other things, "a curved top, thin chin protector, relatively large eyeport height . . . [and] a single-level non-stepped chin bar surface." *Cardinal Motors*, 128 F.4th at 125–26 (internal quotation marks omitted). The present amended complaint lists no fewer than nine precise and specific components that encompass the trade dress, even more detailed than those in *Cardinal Motors*:

(1) an elongated translucent bottle with an elongated opaque white cap;

(2) the elongated, opaque, cylindrical white cap has stylized wording in the same white color embossed on the cap;

(3) the elongated opaque white cap includes a diamond or rhombus shape with letters or words inside the shape;

(4) the geometric shape outline on the elongated, translucent bottle (below the cap) which stretches from one side to the other of the bottle when viewed from the front;

(5) inside the oval on the elongated bottle at the top of the oval are the stylized words "Sol de Janeiro" or "Brazilian Crush" in white font;

(6) inside the oval on the elongated bottle below the text and approximately in the center of the oval are numbers in script font in larger font size than the words above it and below it;

(7) the smaller text below the numbers is also in white font and contains a description of the fragrance profile;

(8) no writing, font, or graphic elements appear on the bottle underneath or otherwise outside of the label; and

(9) a different colored translucent bottle is used for each different fragrance.

¶ 23. Sol de Janeiro further alleges that MCoBeauty uses the trade elements, including "prominently-displayed numbers in a nearly identical white script font encased in thin elongated geometric designs, color schemes, elongated caps with script on the caps, fragrances, and ingredients." ¶ 94.

MCoBeauty states that not all the Sol de Janeiro Mists contain each element in Sol de Janeiro's trade dress list, including a description of the fragrance profile. Doc. 49 at 22. But this fails to rebut that "the articulation is sufficiently precise as to the specific combination of components that comprise [the] trade dress" such that it "satisfies the articulation requirement." *Cardinal Motors*, 128 F.4th at 126. Sol de Janeiro has adequately articulated the trade dress sufficient to survive a motion to dismiss.

**B. Sol de Janeiro Has Not Sufficiently Pleaded Non-Functionality**

"[T]he person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional. This burden of proof gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional." *TrafFix*, 532 U.S. at 29 (internal quotation marks omitted) (citing 15

U.S.C. § 1125(a)(3)). There is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *Id.* at 30. Sol de Janeiro mistakenly states that "the burden . . . and . . . presumption that the features are deemed functional until proved otherwise" are "irrelevant." Doc. 53 at 20–21. *See Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599 (RWS), 2012 WL 3240442, at *6 (S.D.N.Y. Aug. 7, 2012) ("[A p]laintiff's contention that it need not plead any facts establishing that its alleged trade dress is non-functional is in error."). Instead, "[b]ecause functionality is a question of fact, it is often premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage." *GeigTech East Bay LLC v. Lutron Electronics Co., Inc.*, 352 F. Supp. 3d 265, 278 (S.D.N.Y. 2018) (citations omitted). "Nonetheless, even at the motion to dismiss stage, a plaintiff must specifically allege non-functionality." *Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20 Civ. 10469, 2021 WL 1226156, at *9 (S.D.N.Y. Apr. 1, 2021) (citations omitted).

Sol de Janeiro alleges that the pleaded trade elements are non-functional because it designed the elements to "convey a natural elegance and to embody the identity of the Sol de Janeiro brand." ¶¶ 23–25, 27–29.[3] However, it is unclear how the elements convey the elegance and identity of the brand and are not designed for functional reasons like, for example, enabling the user to see the liquid inside. *See* Doc. 52 at 11. At best, Sol de Janeiro has "has made only conclusory allegations about the lack of functionality of its claimed trade dress" that the elements are non-functional and without any utility. *See APP Group (Canada) Inc. v. Rudsak USA Inc.*, No. 21 Civ. 7712 (VEC), 2022 WL 3227861, at *5 (S.D.N.Y. Aug. 10, 2022), *aff'd in part*, *vacated in part*, *remanded*, No. 22-1965, 2024 WL 89120 (2d Cir. Jan. 9, 2024); *Caraway Home*, 2021 WL 1226156, at

[3] The additional facts articulated in Sol de Janeiro's brief, see Doc. 53 at 20–21, might have been sufficient to plead non-functionality if they were in the amended complaint, but they are not. *See APP Group*, 2024 WL 89120, at *3 (stating the court does not consider facts not pleaded in the complaint).

*9. For this reason, Sol de Janeiro has failed to allege that the elements sought to be protected are non-functional.

**C. Sol de Janeiro Has Sufficiently Pleaded Secondary Meaning**

"An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). "Acquisition of secondary meaning is the process by which a product's appearance . . . becomes distinctive as consumers grow to associate it with the maker or sponsor of the product." *APP Group*, 2022 WL 3227861, at *4. "A mark has acquired secondary meaning when, in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n. 11 (1982)). "When determining whether a trade dress has secondary meaning, courts consider several factors, including: (1) plaintiff's advertising expenditures; (2) consumer surveys linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the trade dress; and (6) the length and exclusivity of the use." *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017).

In relation to the six factors, Sol de Janeiro alleges that it has made substantial investments in advertising and promoting its products in the U.S.; since 2020, it has sold over 100 million units of beauty and cosmetic products including the Sol de Janeiro Mists; in 2023, it had a 174% sales increase in a six month period, including over 19% in the third quarter; and it has won numerous accolades, including the 2015 Latina Beauty Award, the 2025 Allure Reader's Choice Award for Body, two nominations in the 2024 Fragrance Foundation Awards, status as one of Women's Wear Daily Beauty Inc.'s 2024

and 2025 Most Powerful Beauty Brands, and Sephora's 2023 biggest seller in body care. ¶¶ 14–17. All these facts weigh in favor of finding a secondary meaning.

Despite MCoBeauty's contention that Sol de Janeiro failed to link its success to the claimed trade dress, Doc. 49 at 25, as previously noted, Sol de Janeiro alleged that it designed the trade dress elements to "embody the identity of the Sol de Janeiro brand," ¶ 25. In fact, Sol de Janeiro alleges that the reason MCoBeauty produces copies of Sol de Janeiro's products is because Sol de Janeiro's products are distinctively identifiable by their "coloring, packaging, bottling, labelling, and presentation." ¶ 86. *See Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 445 (S.D.N.Y. 2017) (noting that the "only reason [defendant] mimics [plaintiff's] fragrances is because the latter's products are distinctively identifiable in the minds of consumers"); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 330 (S.D.N.Y. 2010) ("[I]ntentional copying is persuasive evidence of secondary meaning.").

**D. Sol de Janeiro Has Sufficiently Pleaded Confusion Between Goods**

To determine whether there is a likelihood of confusion, courts in this Circuit consider a list of eight factors. *See Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *see also Guthrie Healthcare System v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). These so-called *Polaroid* factors are: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the reciprocal of defendant's good faith in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers. *Polaroid Corp.*, 287 F.2d at 495; *see also Hamilton International Ltd. v. Vortic LLC*, 13 F.4th 264, 272 (2d Cir. 2021). Claims for trademark infringement or unfair competition pursuant to New York common law likewise require a showing of likelihood of confusion; courts employ a similar standard in analyzing the question of likelihood of confusion for such claims. *See, e.g.*, *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456

(S.D.N.Y. 2005) (explaining that, pursuant to New York law, "the elements necessary to prevail on causes of action for trademark infringement and unfair competition . . . mirror the Lanham Act claims") (internal quotation marks and citations omitted).

A plaintiff is not, however, required to address the *Polaroid* factors in its complaint, as "such a requirement would be inconsistent with the notice pleading philosophy of the Federal Rules of Civil Procedure." *LBF Travel, Inc. v. Fareportal, Inc.*, No. 13 Civ. 9143 (LAK) (GWG), 2014 WL 5671853, at *8 (S.D.N.Y. Nov 5, 2014) (internal quotation marks and citations omitted). Consumer confusion analysis is highly fact-intensive and does not "ordinarily . . . lend itself to a motion to dismiss." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 449 (S.D.N.Y. 2014) (citations omitted); *see also Deere & Co. v. MTD Products, Inc.*, No. 00 Civ. 5936 (LMM), 2001 WL 435613, at *1 (S.D.N.Y. Apr. 30, 2001) (noting that likelihood of confusion is not an appropriate inquiry on a motion to dismiss because the court must accept the allegations in the complaint as true). Therefore, "[a] motion to dismiss will be granted for failure to plead likelihood of confusion only if no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove." *LBF*, 2014 WL 5671853, at *8 (internal quotation marks and citations omitted). Here, finding the allegations more than "entirely conclusory," an evaluation of the *Polaroid* factors is instructive. *Cf. Wonderful Company LLC v. Nut Cravings, Inc.*, 21 Civ. 03960 (MKV), 2022 WL 4585344, at *4 (S.D.N.Y. Sept. 29, 2022).

The first *Polaroid* factor instructs the Court to consider the strength of Sol de Janeiro's mark. For the same reasons listed in the section discussing the secondary meaning above, Sol de Janeiro has sufficiently alleged that its mark is strong.

The second *Polaroid* factor concerns the similarity of the marks. "In assessing similarity of two marks, courts look to the 'overall impression created by the [marks] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers.'" *Lebewohl v. Heart Attack Grill LLC*, 890 F.

Supp. 2d 278, 294 (S.D.N.Y. 2012) (quoting *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993)). "If the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who have a general, vague, or even hazy, impression or recollection of the other party's mark, there may still be similarity." *Bonilla v. H&M Hennes & Mauritz L.P.*, No. 12 Civ. 6919 (LAK) (MHD), 2014 WL 12661621, at *10 (S.D.N.Y. Apr. 16, 2014) (internal quotation marks omitted) (quoting *Lebewohl*, 890 F. Supp. 2d at 294)).

Sol de Janeiro alleges that "[t]he packaging and presentation of" the MCoBeauty Mists "copy the overall look and feel of the Sol de Janeiro Trade Dress." ¶ 87. MCoBeauty argues that customers aren't confused because they "are keenly aware . . . that MCoBeauty[ Mists] are dupes of Sol de Janeiro's." Doc. 49 at 27. Yet MCoBeauty defines dupe products as "items that offer comparable aesthetics or functionality" albeit "at a more accessible price point." *Id.* at 7. MCoBeauty can't claim that dupes are of comparable aesthetic to another product and also claim that the products' marks are not similar. By stylizing the packaging and even using the same scent profiles, consumers may well attribute MCoBeauty's products to Sol de Janeiro. Accordingly, "[c]onsidering the general impression created by the marks," the Court finds that Sol de Janeiro has set forth a strong showing of similarity. *See Morningside Group Ltd. v. Morningside Capital Group L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999).

The third *Polaroid* factor concerns the proximity of products, which weighs in favor of Sol de Janeiro. "This inquiry focuses on whether and to what extent the two products compete with each other." *Lebewohl*, 890 F. Supp. 2d at 294. If the companies operate in "different market spaces and target different consumers with different products . . . or services," consumer confusion is unlikely. *OffWhite Productions, LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 565 (S.D.N.Y. 2020).

Sol de Janeiro and MCoBeauty sell products via the same channels. Sol de Janeiro sells in retail stores like Sephora and Ulta Beauty, and online on their own

website, Amazon, and Asos. ¶ 34. MCoBeauty sells in Kroger, in Walgreens, and on its own website. ¶ 44. MCoBeauty characterizes the retail stores, like Fred Meyer and Target, in which it sells its product as "grocery and discount department stores," and the retail stores in which Sol de Janeiro sells their products as "premium beauty specialty stores." Doc. 49 at 9. However, there is not much difference between the allegedly "premium" and "discount" stores, especially when, as Sol de Janeiro points out, "Ulta stores are often located within Target stores, placing Sol de Janeiro's . . . Mists just steps away from" MCoBeauty Mists. Doc. 53 at 24.

Sol de Janeiro and MCoBeauty also sell products to the same customers. The amended complaint highlights examples of reviewers consuming both products. ¶ 95.

The fourth *Polaroid* factor concerns the likelihood of whether Sol de Janeiro may "bridge the gap." "Courts have found that when a plaintiff and defendant 'already occupy the same market[,] the gap has been bridged.'" *Lopez v. Nike, Inc.*, No. 20 Civ. 905 (PGG) (JLC), 2021 WL 128574, at *9 (S.D.N.Y. Jan. 14, 2021) (citing *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998)), *report and recommendation adopted*, No. 20 Civ. 905 (PGG) (JLC), 2021 WL 2207451 (S.D.N.Y. Feb. 16, 2021). Here, Sol de Janeiro and MCoBeauty already sell fragrances and operate in the same market, so the Court need not address this factor, which is neutral to the parties. *See id.* (finding no gap to bridge when the parties' products were already in competitive proximity).

The fifth *Polaroid* factor weighs in favor of Sol de Janeiro. MCoBeauty argues that Sol de Janeiro supported the contention of a lack of actual confusion by including feedback from consumers that they understood that MCoBeauty Mists were different from Sol de Janeiro Mists. Doc. 49 at 27. Sol de Janeiro does not allege, as plaintiffs often do, anecdotal evidence that a customer accidentally bought the MCoBeauty Mist when she intended to instead buy the Sol de Janeiro Mist, or that consumer surveys indicated actual confusion. *Compare* Doc. 53 at 26 *with Van Leeuwen Ice Cream LLC v.*

*Rebel Creamery LLC*, No. 21 Civ. 2356 (EK) (JRC), 2026 WL 2056314, at *13 (E.D.N.Y. July 16, 2026) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)). However, Sol de Janeiro has, as discussed below, alleged that there is confusion because MCoBeauty adopted trade dress similar to Sol de Janeiro's knowingly. ¶¶ 86–87; *see Coty*, 277 F. Supp. 3d at 453 ("[E]vidence of intentional copying gives rise to a presumption of actual confusion.").

The sixth *Polaroid* factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between [its] and the senior user's product." *Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) (internal quotation marks and citations omitted). Here, Sol de Janeiro alleges that MCoBeauty adopted trade dress similar to Sol de Janeiro's knowingly, ¶¶ 86–87; used similar fragrance names, ¶¶ 66, 68; and used Sol de Janeiro's name as keywords on MCoBeauty's website, ¶ 97. MCoBeauty has acknowledged that it describes itself on its website "as a company engaged in the sales of affordable alternatives to luxury products." Doc. 52 at 9. Thus, the Court finds that this factor weighs in favor of Sol de Janeiro, as MCoBeauty expressly capitalizes on Sol de Janeiro's reputation to gain customers itself.

The seventh *Polaroid* factor, the quality of the product, "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995). Sol de Janeiro alleges that the MCoBeauty Mists are of inferior quality because they do not have the same materials, exact same fragrances, or longevity before dissipation as compared to Sol de Janeiro Mists. ¶¶ 84, 107. Regarding its own reputation, Sol de Janeiro alleges that it has made substantial investments in advertising and promoting products, experienced significant sales success, won awards for its products, and possesses a high number of social media followers. ¶¶ 14–17. MCoBeauty argues that it "creates quality, cruelty-free, vegan products that

offer consumers the performance and feel of high-end, designer brands without the high-end price tag," Doc. 49 at 8, and that "consumers are keenly aware" that "MCoBeauty [Mists] are dupes of Sol de Janeiro's," *id.* at 27. Viewed in the light most favorable to Sol de Janeiro, association of lower quality products with Sol de Janeiro would run a risk of jeopardizing Sol de Janeiro's good reputation. *See Chrome Hearts LLC v. Controse Inc.*, No. 21 Civ. 6858 (LJL), 2023 WL 5049198, at *20 (S.D.N.Y. Aug. 8, 2023). Thus, at the motion to dismiss phase, the seventh factor weighs in Sol de Janeiro's favor.

Lastly, the *Polaroid* factor of consumer sophistication "recognizes that the likelihood of confusion between the products at issue depends in part on the sophistication of the relevant purchasers." *Lebewohl*, 890 F. Supp. 2d at 296 (internal quotation marks and citations omitted). The more sophisticated the purchaser, the lower the likelihood of confusion. *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 591–92 (S.D.N.Y. 2015). Here, the parties seem to agree that their customers are sophisticated. *See* ¶¶ 33–37; Docs. 49 at 27; 53 at 26; 52 at 12. However, advanced sophistication "is to be viewed in light of the conditions under which the product is purchased," *Clinique Laboratories, Inc. v. Dep Corp.*, 945 F. Supp. 547, 556 (S.D.N.Y. 1996), which in this case, weighs in favor of Sol de Janeiro. The present case may be compared to that of *Clinique Laboratories*, a case also regarding beauty products that found the eighth factor to weigh in the senior user's favor—here, Sol de Janeiro's—despite the sophistication of the consumers. *Id.* In *Clinique Laboratories*, the consumers were found to be relatively sophisticated because the senior user's products were "not extravagantly priced," "sold in high quality department stores," and used on the skin. *Id.* However, "the products and marks [were] very similar or identical," and the buyers possessed keen "awareness of status brand names and designs." *Id.* Here, MCoBeauty alleges a difference in consumer channels, Doc. 49 at 9, but also acknowledges the similarity of the products and marks and the consumers' alleged awareness of the brand names and designs, *id.* Thus, Sol de Janeiro's "consumers are relatively sophisticated, but

the circumstances under which they shop . . . diminish[es] the effect of their sophistication" and the eighth factor weighs slightly in favor of Sol de Janeiro. *See Clinique Laboratories*, 945 F. Supp. at 556.

In summary, seven factors weigh in favor of Sol de Janeiro, and one factor is neutral. However, consumer confusion analysis is still highly fact-intensive and "ordinarily does not lend itself to a motion to dismiss." *Transcience Corp.*, 50 F. Supp. 3d at 449. Because of the strength of Sol de Janeiro's brand, the striking similarity of the marks and products, and the fact that the parties target similar consumers in similar channels of commerce, the Court finds that Sol de Janeiro has adequately pleaded consumer confusion.

Altogether and regardless of the sufficiency of Sol de Janeiro's pleadings as to the articulation of the trade dress, acquired secondary meaning of the trade dress, and consumer confusion, Sol de Janeiro's trade dress infringement claim must be dismissed, since it has not sufficiently pleaded that the trade dress is non-functional. MCoBeauty's motion to dismiss Sol de Janeiro's trade dress claims is granted.

## VI. UNFAIR TRADE PRACTICES

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349. To state a claim pursuant to § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). To state a claim pursuant to § 349, a plaintiff also must satisfy the "territorial test"; "the deception of a consumer must occur in New York." *In re Fyre Festival Litigation*, 399 F. Supp. 3d 203, 223 (S.D.N.Y. 2019) (citing *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167 (S.D.N.Y. 2014)).

**A. Sol de Janeiro Has Sufficiently Pleaded MCoBeauty Deceived Customers in New York**

MCoBeauty argues that Sol de Janeiro "failed to plead any facts to invoke GBL § 349 for the purpose of redressing alleged deceptive acts that occurred in New York." Doc. 49 at 30–31 (citing *Ward*, 3 F. Supp. 3d at 167).

In *Ward*, the court found that because the defendant operated a website in New York, maintained its bank account in New York, and many of the relevant communications with the defendant occurred on or through the defendant's website, that even the out-of-state plaintiffs "pleaded sufficient facts that, at the very least, g[ave] rise to a plausible inference that the allegedly deceptive transaction occurred in New York and that the defendant's conduct fell within the ambit of the 'legislative intent to address commercial misconduct occurring within New York.'" 3 F. Supp. 3d at 168 (quoting *Goshen v. Mutual Life Insurance Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002)). Similarly, Sol de Janeiro pleaded that MCoBeauty has an office in New York, and sells "in the State of New York at popular retailers, such as Kroger and Walgreens." ¶¶ 3, 44. Thus, the conduct is alleged to have occurred in New York, and Sol de Janeiro has satisfied the territorial test. *See Ward*, 3 F. Supp. 3d at 168.

**B. Sol de Janeiro Has Sufficiently Pleaded Materially Misleading Keywords, Consumer-Oriented Behavior, and Injury**

Sol de Janeiro has failed to plead that the YouTube Video, Instagram Video, and Website Reviews are misleading; however, it has sufficiently pleaded that the Keywords are misleading.

"[T]he harm arising from the advertising must be sufficiently directed or borne by consumers in order to meet the consumer-oriented prong." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 642 (S.D.N.Y. 2018). Here, Sol de Janeiro has pleaded that consumers have been tricked into buying MCoBeauty Mists, and have been disappointed by MCoBeauty Mists. ¶¶ 95, 108. Viewing the facts in the light most favorable to Sol de Janeiro, the conduct was consumer-oriented.

The amended complaint also plausibly alleges that MCoBeauty's Keywords would likely impact consumers' decisions; the amended complaint alleges injury in the form of harm to Sol de Janeiro's goodwill and sales. ¶ 108. Sol de Janeiro alleges it suffered injury because of the conduct.

For these reasons, the Court finds that Sol De Janeiro has sufficiently pleaded a claim pursuant to § 349. Because Sol de Janeiro satisfies the territorial test, and sufficiently pleaded that the conduct was materially misleading, the conduct was consumer-oriented, and Sol de Janeiro suffered injury, MCoBeauty's motion to dismiss Sol de Janeiro's unfair trade practices claim as to the Keywords is denied.

## VII. CONCLUSION

MCoBeauty's motion to dismiss is GRANTED in part and DENIED in part. Sol De Janeiro's claim for trade dress infringement is dismissed without prejudice. The motion is otherwise denied. Sol De Janeiro's request for oral argument, Doc. 51, is DENIED as moot. Sol De Janeiro may file a second amended complaint by October 20, 2026. If Sol De Janeiro fails to file a second amended complaint by that date, its claims for trade dress infringement and unfair trade practices will be dismissed with prejudice. If Sol de Janeiro files an amended complaint, MCoBeauty is directed to file an answer or otherwise move by November 3, 2026. The Clerk of Court is respectfully directed to terminate the motion, Doc. 48.

It is SO ORDERED.

Dated: September 30, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.